ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| NATHANAEL ARROYO MARTÍNEZ, Recurrente, v. DEPARTAMENTO DE EDUCACIÓN Recurrida. | KLRA202500197 | REVISIÓN procedente del Departamento de Educación. Caso núm.: 2018-06-0837. Sobre: reclutamiento y selección. |
|---|---|---|

Panel integrado por su presidenta, la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 15 de mayo de 2025.

La parte recurrente, señor Nathanael Arroyo Martínez (señor Arroyo), comparece mediante un recurso de revisión judicial. En él, solicita que este Tribunal revoque la *Resolución Sumaria* emitida y notificada el 4 de marzo de 2025, por la Oficina de Apelaciones del Sistema de Educación (OASE). En su determinación, la OASE declaró sin lugar la apelación del señor Arroyo, y ordenó el cierre y archivo del caso, con perjuicio.

El 9 de mayo de 2025, la parte recurrida, Departamento de Educación (DE), por conducto de la Oficina del Procurador General, presentó su escrito en oposición.

Examinados los argumentos de las partes comparecientes, a la luz del derecho aplicable, este Tribunal confirma la *Resolución Sumaria* recurrida.

I

En el recurso ante nuestra consideración, el señor Arroyo impugnó el proceso de reclutamiento de personal docente a un puesto transitorio de maestro en educación industrial, en una escuela del municipio de San Sebastián, para el año escolar 2017-2018[1].

---

[1] Debido a las diversas variaciones del nombre de la escuela provistas en los distintos escritos presentados, nos reservamos su mención para la parte final de esta decisión.

Número Identificador

SEN2025 _____

En síntesis, el señor Arroyo participó en el proceso de entrevista para optar por el nombramiento transitorio antes mencionado. La vacante, con número T87209, se anunció mediante una convocatoria abierta el 14 de julio de 2017. Finalmente, el Comité de Entrevista recomendó para el puesto al señor Elvin Medina Pérez (señor Medina)[2].

Posteriormente, el 25 de julio de 2017, el señor Arroyo presentó una querella sobre la selección del señor Medina para el puesto ante el Comité de Impugnaciones del Departamento de Educación[3].

El 26 de abril de 2018, el Comité de Impugnaciones declaró sin lugar la querella presentada por el señor Arroyo[4]. En su consecuencia, validó el nombramiento realizado, según este fuera anunciado en la Carta Circular 31-2016-2017; particularmente, el procedimiento de reclutamiento especial[5].

Inconforme, el señor Arroyo instó una apelación ante la Oficina de Apelaciones del Sistema de Educación (OASE) el 1 de junio de 2018[6]. Arguyó que el Comité de Impugnaciones había errado al declarar sin lugar su querella. Indicó que la decisión se había basado en los expedientes oficiales y no en la evidencia presentada el día de la entrevista. Entre otras cosas, cuestionó los criterios de valoración para la selección del candidato.

El 15 de febrero de 2019, la parte apelada contestó la apelación[7].

---

[2] *Véase*, apéndice del recurso, a la pág. 23. *Informe para evaluación de querella presentada por el Sr. Nathanael Arroyo Martínez el 27 de julio de 2017, relacionada con el nombramiento de maestro de colisión de autos en la Escuela Manuel Meléndez Liciaga del Distrito Escolar de Aguadilla.* Este informe tiene fecha del 26 de abril de 2018.

[3] *Íd.*

[4] *Véase*, apéndice del recurso, a las págs. 21-29. La determinación exhibe sello del Departamento de Educación con fecha de "Recibido" y sello electrónico de correo del 8 de mayo de 2018.

[5] *Íd.* Véase, además, apéndice del recurso, a las págs. 30-56: *Carta Circular Núm. 31-2016-2017 - Política pública para la reubicación, reasignación, traslado y reclutamiento del personal docente de las escuelas, de los institutos tecnológicos, la Escuela de Troquelería y Herramentaje, y la PR Aviation Maintenance Institute en el Departamento de Educación* del 27 de enero de 2017.

[6] *Véase*, apéndice del recurso, a las págs. 62-68. *Véase*, además, **nota al calce núm. 8, infra**. La apelación fue instada inicialmente ante la Comisión Apelativa del Servicio Público o CASP, la cual ordenó su traslado a la OASE.

[7] *Íd.*, a la pág. 78: *Oposición a "Solicitud de Resolución Sumaria" de la parte apelante y Solicitud de Resolución Sumaria a favor de la parte apelada* presentada por el DE el 24 de octubre de 2022. *Véase*, además, apéndice del recurso, a la pág. 2.

El 27 de julio de 2022, el señor Arroyo presentó una *Solicitud de Resolución Sumaria* ante la OASE[8]. En ella, solicitó que se revocara el nombramiento del señor Medina y que se ordenara al Departamento de Educación al "pago de salarios dejados de recibir por el apelante [señor Arroyo] durante el año escolar 2017-2018, pues éste debió haber sido nombrado para el puesto vacante."

El 24 de octubre de 2022, el DE presentó ante la OASE su oposición a la solicitud del señor Arroyo[9].

El 4 de marzo de 2025, la OASE emitió la *Resolución Sumaria* recurrida[10]. A continuación, transcribimos los hechos sobre los que determinó que no existía controversia:

1. Para el 14 de julio de 2017, el profesor Nathanael Arroyo laboraba como Maestro de Educación Industrial (Colisión Automotriz) en la Escuela Superior Vocacional Manuel M. Liciaga y poseía certificación de maestro.

2. El 14 de julio de 2017, se ofreció por convocatoria abierta en un procedimiento de **reclutamiento especial el nombramiento transitorio** al puesto vacante y disponible de Maestro de Educación Industrial (Colisión Automotriz) en la Escuela Manuel Meléndez Liciaga del municipio de San Sebastián.

3. El profesor Nathanael Arroyo Martínez participó de una convocatoria especial para el puesto de Maestro de Educación Industrial (Colisión Automotriz) en la Escuela Manuel Meléndez Liciaga del municipio de San Sebastián para el año escolar 2017-2018.

4. El apelante poseía certificado de maestro en la categoría de Educación Industrial (Colisión Automotriz) vigente para la fecha de la entrevista.

5. El día 25 de julio de 2017, el apelante presentó ante el Departamento de Educación documento titulado *Información Requerida para Impugnación*, mediante el cual impugnó el nombramiento realizado al señor Elvin Medina Pérez por el Departamento de Educación en una plaza de Maestro de Educación Industrial (Colisión Automotriz) en la escuela Manuel Meléndez Liciaga del municipio de San Sebastián.

---

[8] *Véase*, apéndice del recurso, a las págs. 69-77. Según la *Solicitud de Resolución Sumaria* presentada por el señor Arroyo, **la CASP, mediante *Orden*, notificó el traslado del caso a la OASE, en virtud de la *Ley de Reforma Educativa*, Ley Núm. 85 de 29 de marzo de 2018**. De los documentos en el expediente no se desprende la fecha en la que la *Orden* de la CASP fue emitida.

[9] *Véase*, apéndice del recurso, a las págs. 78-92. *Oposición a "Solicitud de Resolución Sumaria" de la parte apelante y Solicitud de Resolución Sumaria a favor de la parte apelada* presentada por el DE el 24 de octubre de 2022.

[10] *Véase*, apéndice del recurso, a las págs. 1-18.

6. El Comité de Impugnaciones recibió y evaluó la querella que el apelante presentó el 25 de julio de 2017 relacionada con el nombramiento del Maestro de Colisión de Autos en el puesto T87209 en la escuela Manuel Meléndez Liciaga del municipio de San Sebastián.

7. Según surge del Informe para Evaluación de Querella presentada por el Sr. Nathanael Arroyo Martínez el 27 de julio de 2017 relacionada con el nombramiento de maestro de colisión de autos en la Escuela Manuel Meléndez Liciaga del Distrito Escolar de Aguadilla, **surge que al momento de la entrevista el querellante no presentó evidencia alguna de cumplir con el requisito de tener la colegiación expedida por el Colegio de Técnicos y Mecánicos Automotrices y la licencia de la Junta del Departamento de Estado y que de una búsqueda por internet realizada por el Comité de Impugnaciones estos constataron que, en efecto, a esa fecha el querellante tenía vencida la licencia**.

8. El apelante al momento de la entrevista para el reclutamiento tenía al día la colegiación del Colegio de [T]écnicos y Mecánicos Automotrices y la licencia vigente expedida por el Departamento de Estado. Véase informe página 5, anejo B del apelante.

9. Del referido informe surge que **el Profesor Elvin Medina Pérez, tenía 7 años de experiencia docente, aunque no tenía el certificado regular de maestro. El Apelante Arroyo Martínez, aunque tenía el certificado regular de maestro, pero contaba solo dos años de experiencia docente**.

10. El Departamento de Educación emitió la Carta Circular 31-2016-2017 sobre Política P[ú]blica para la Reubicación, Reasignación, Traslado y Reclutamiento del Personal Docente en las Escuelas de los Institutos Tecnológicos, la Escuela de Troquelería y Herramentaje y la PR Aviation Maintenance Institute en el Departamento de Educación, la cual se usó para establecer los parámetros para el reclutamiento especial objeto de la presente apelación.

11. No obstante lo establecido en el informe de impugnación, **la puntuación del profesor Medina Pérez a la luz de la rúbrica del Anejo VII de la Carta Circular 31-2026-2017 fue de 70 puntos en comparación con los 35 puntos del apelante Arroyo Martínez. La diferencia en puntaje otorgado fue por la entrevista realizada y por el portafolio. No surge que haya sido por la falta o no de algún requisito de colegiación en la convocatoria a pesar de los alegatos a esos efectos**.

12. El informe del Comité de Impugnaciones señala que tomó en consideración tanto la rúbrica del Anejo VIII de la Carta Circular 31-2016-2017, como la Carta Circular Núm. 7-2001-2002 y el Memorando expedido por expedido [*sic*] por el Subsecretario del Departamento de Educación, Prof. Harry Valentín González el 31 de diciembre de 2013 "Profesiones Reguladas por el Departamento de Estado".

13. Mediante carta suscrita el 26 de abril de 2018, notificada 4 de mayo de 2018 y recibida el 10 de mayo de 2018, la

entonces Secretaria de Educación, Julia B. Keleher remitió al apelante una carta en la cual declaró No Ha Lugar la impugnación realizada por éste.

(Énfasis nuestro).

Inconforme aún, el 3 de abril de 2025, la parte recurrente presentó su *Recurso de Revisión Judicial* ante este foro revisor y planteó los siguientes errores:

PRIMER ERROR: ERRÓ EN DERECHO LA OASE AL DETERMINAR MEDIANDO ERROR MANIFIESTO EN LA APLICACIÓN DEL DERECHO QUE EL PROFESOR ELVIN MEDINA PÉREZ ES PARTE INDISPENSABLE, AUN CUANDO EL NOMBRAMIENTO FUE POR UN AÑO (2017-2018), LO QUE SE IMPUGNA ES EL PROCESO IMPLEMENTADO POR EL DEPARTAMENTO DE EDUCACIÓN Y EL REMEDIO QUE SE SOLICITA ES [Ú]NICAMENTE CONTRA DICHA AGENCIA.

SEGUNDO ERROR: ERRÓ EN DERECHO LA OASE AL DETERMINAR MEDIANDO ERROR MANIFIESTO QUE EL APELANTE NO DEMOSTR[Ó] ESTAR ALTAMENTO CUALIFICADO PARA EL PUESTO VACANTE Y DISPONIBLE DE MAESTRO DE EDUCACIÓN INDUSTRIAL (COLISIÓN AUTOMOTRIZ) PARA EL AÑO ESCOLAR 2017-2018 EN LA ESCUELA MANUEL MÉNDEZ LICIAGA DEL MUNICIPIO DE SAN SEBASTIÁN, AUN CUANDO SE DESPRENDE DE LAS DETERMINACIONES DE HECHOS DE LA RESOLUCI[Ó]N SUMARIA RECURRIDA Y DE LA SOLICITUD DE RESOLUCI[Ó]N SUMARIA QUE EL APELANTE TEN[Í]A CERTIFICADO DOCENETE [*sic*] EN LA CATEGOR[Í]A, TEN[Í]A LA LICENCIA Y LA COLEGIACI[Ó]N VIGENTES.

TERCER ERROR: ERRÓ EN DERECHO LA OASE AL DETERMINAR MEDIANDO ERROR MANIFIESTO, PREJUICIO Y PARCIALIDAD QUE EL APELANTE NO PRESENT[Ó] EN LA CONVOCATORIA LA EVIDENCIA DE LA COLEGIACI[Ó]N VIGENTE, AUN CUANDO SE DESPRENDE DEL INFORME DEL COMITÉ DE IMPUGNACIONES QUE EL APELANTE S[Í] PRESENT[Ó] EVIDENCIA DE CUMPLIR CON LA COLEGIACI[Ó]N VIGENTE.

CUARTO ERROR: ERRÓ EN DERECHO LA OASE AL DETERMINAR MEDIANDO PREJUICIO Y PARCIALIDAD QUE EL COMITÉ DE IMPUGNACIONES CONSTAT[Ó] QUE EL APELANTE TEN[Í]A VENCIDA LA LICENCIA EXPEDIEDA [*sic*] POR DEL DEPARTAMENTO DE ESTADO, AUN CUANDO LA JUEZA ADMINISTRATIVO [*sic*] CONCLUYE EN LAS DETERMINACIONES DE HECHOS DE LA RESOLUCIÓN SUMARIA RECURRIDA QUE EL APELANTE TEN[Í]A LA LICENCIA VIGENTE.

QUINTO ERROR: ERRÓ EN DERECHO LA OASE AL DETERMINAR MEDIANDO ERROR MANIFIESTO QUE LA ESCUELA SUPERIOR VOCACIONAL MANUEL M[É]NDEZ LICIAGA DEL DEPARTAMENTO DE EDUCACI[Ó]N ES UNA ESCUELA ESPECIALIZADA Y APLICAR LA EXCEPCI[Ó]N

DISPUESTA EN LA CARTA CIRCULAR 31-2016-2017 PARA EL PROCESO DE SELECCIÓN DE NOMBRAMIENTO DEL PUESTO IMPUGNADO.

SEXTO ERROR: ERRÓ EN DERECHO LA OASE MEDIANDO ABUSO DE DISCRECI[Ó]N, PREJUICIO Y PARCIALIDAD AL DESESTIMAR LA APELACIÓN 2018-06-0837 Y DETERMINAR QUE EL APELANTE FALL[Ó] EN PONER A LA OASE EN POSICI[Ó]N DE CONCEDER EL REMEDIO SOLICITADO, AUN CUANDO DE LA SOLICITUD DE RESOLUCI[Ó]N SUMARIA RADICADA POR EL APELANTE EN LA OASE SURGE TODA LA EVIDENCIA QUE DEMUESTRA QUE EL APELANTE ES EL MERITORIO PARA EL NOMBRAMIENTO IMPUGNADO Y POR ENDE PROCEDE CONCEDER EL REMEDIO SOLICITADO, O EN LA ALTERNATIVA, DETERMINAR QUE EXISTEN CONTROVERSIAS SUSTANCIALES DE HECHOS MATERIALES Y PROCEDER CON LA CELEBRACIÓN DE UNA VISTA EN SU FONDO.

(Énfasis omitido; mayúsculas en el original).

Oportunamente, la parte recurrida presentó su oposición[11].

Perfeccionado el recurso, resolvemos.

II

A

La norma reiterada es a los efectos de que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues son estos los que cuentan con el conocimiento experto de los asuntos que les son encomendados. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021). Además, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad de la actuación de la agencia. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013). Debido a que toda sentencia o determinación administrativa está protegida por una presunción de corrección y validez, la parte que acude a este Tribunal de Apelaciones tiene el deber de colocar a este foro en posición de conceder el remedio solicitado. *Morán v. Martí,* 165 DPR 356, 366 (2005).

A su vez, el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a determinar: (1) si el remedio concedido

---

[11] El Departamento de Educación de Puerto Rico, representado por el Procurador General de Puerto Rico, presentó una *Solicitud de Término Adicional* el 30 de abril de 2025. Instó oportunamente su *Escrito en Cumplimiento de Resolución* el 9 de mayo de 2025.

por la agencia fue apropiado; (2) si las determinaciones de hechos de la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo; y, (3) si las conclusiones de derecho fueron correctas. *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010).

Así pues, como norma general, las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas". *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006). Por ello, la revisión judicial ha de limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron. *Torres v. Junta Ingenieros*, 161 DPR 696, 708 (2004).

De otra parte, las conclusiones de derecho de las agencias administrativas serán revisables en toda su extensión. *Torres Santiago v. Depto. Justicia*, 181 DPR 969,1003 (2011); *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR, a la pág. 941. Sin embargo, esto no significa que los tribunales podemos descartar libremente las conclusiones e interpretaciones de la agencia. *Otero v. Toyota*, 163 DPR 716, 729 (2005).

En fin, como ha consignado el Tribunal Supremo de Puerto Rico, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otro*, 206 DPR, a la pág. 819, que cita a *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

B

La Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, establece que una moción de sentencia sumaria debe estar fundada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. En su consecuencia, podrá dictarse sentencia sumaria cuando no exista ninguna controversia real sobre los hechos materiales y esenciales del caso y, además, si el derecho aplicable lo justifica. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). A su vez, la controversia relacionada a un hecho material debe ser real, "por lo que cualquier duda es insuficiente para derrotar una Solicitud de Sentencia Sumaria". *Ramos Pérez v. Univisión*, 178 DPR, a las págs. 213-214.

Así, el Tribunal Supremo ha señalado que, "la parte que solicita la sentencia sumaria en un pleito está en la obligación de demostrar, fuera de toda duda, la inexistencia de una controversia real sobre todo hecho pertinente que a la luz del derecho sustantivo determinaría una sentencia a su favor como cuestión de ley". *Rivera, et al. v. Superior Pkg., Inc., et al.*, 132 DPR 115, 133 (1992). A su vez, "[a]l considerar la moción de sentencia sumaria se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente." *Piñero v. A.A.A.*, 146 DPR 890, 904 (1998).

Por último, no procede resolver un caso por la vía sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones alternativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o, (4) como cuestión de derecho no procede. *Echandi v. Stewart Title Guaranty Co.*, 174 DPR 355, 368 (2008). Además, un tribunal no deberá dictar sentencia

sumaria cuando existen elementos subjetivos de intención, negligencia, propósitos mentales o cuando el factor de credibilidad es esencial. *Carpets & Rugs v. Tropical Reps*, 175 DPR 615, 638 (2009).

C

La Regla 16 de Procedimiento Civil, 32 LPRA Ap. V, gobierna lo relacionado a la acumulación de partes. En específico, dispone que "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda". Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V.

Una parte es indispensable cuando la controversia no puede adjudicarse sin su presencia ya que sus derechos se verían afectados. *Rivera Marrero v. Santiago Martínez*, 203 DPR 462, 479 (2019); *López García v. López García*, 200 DPR 50, 63 (2018).

El alcance de la Regla 16.1 forma parte del esquema de rango constitucional que prohíbe que una persona sea privada de su libertad o propiedad sin el debido proceso de ley. *López García v. López García*, 200 DPR, a la pág. 63-64. Por tal motivo, ante la ausencia de una parte indispensable, el tribunal carece de jurisdicción para resolver la controversia. *Rivera Marrero v. Santiago Martínez*, 203 DPR, a la pág. 479; *Bonilla Ramos v. Dávila Medina*, 185 DPR 667, 677-678 (2012); *Romero v. S.L.G. Reyes*, 164 DPR 721, 733 (2005).

Por otro lado, el Tribunal Supremo de Puerto Rico ha expresado que, a la hora de determinar si la presencia de una parte es indispensable para adjudicar una controversia, se debe analizar "si el tribunal podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente". *Bonilla Ramos v. Dávila Medina*, 185 DPR, a la pág. 677. A su vez, en la interpretación de esta Regla se requiere una evaluación a la luz de las circunstancias particulares que se presenten, y no de una fórmula rígida para determinar su aplicación. *López García v. López García*, 200 DPR, a la pág. 64.

D

En nuestro ordenamiento jurídico un empleado público de carrera ostenta un interés propietario sobre su empleo, que se encuentra protegido por la Constitución del Estado Libre Asociado de Puerto Rico, así como por la de Estados Unidos de América. *Domínguez Castro et al. v. E.L.A. I*, 178 DPR 1, 46-47 (2010). Es decir, posee una expectativa de continuidad en el empleo, que forma parte de su derecho de propiedad, del cual no puede ser privado sin que medie el debido proceso de ley. *Vázquez Cintrón v. Banco Desarrollo*, 171 DPR 1, 21 (2007).

A la luz de lo anterior, para que sea válida la destitución de un empleado público tiene que mediar justa causa y la celebración de una vista, lo contrario implicaría despojar a un empleado de su propiedad sin el debido proceso de ley. *Torres Solano v. P.R.T.C.,* 127 DPR 499, 520 (1990). En específico, "sólo pod[rá] ser destituid[o] previa formulación de los cargos, la celebración de una vista y una justa causa, es decir, con el debido proceso de ley". *Vázquez Cintrón v. Banco Desarrollo*, 171 DPR, a la pág. 24.

Por otro lado, el Tribunal Supremo de Puerto Rico ha interpretado que, a diferencia de los empleados públicos de carrera, los empleados transitorios no tienen expectativa de retención en el empleo, luego de vencido su nombramiento. *Depto. Recs. Naturales v. Correa*, 118 DPR 689, 694-695 (1987); *S.L.G. Giovanetti v. E.L.A.*, 161 DPR 492, 507-508 (2004)[12].

III

Según expuesto, la parte recurrente apuntó la comisión de seis errores por parte de la OASE. En resumen, arguyó que el maestro seleccionado no constituía parte indispensable como había determinado la

---

[12] En *Depto. Recs. Naturales v. Correa*, 118 DPR 689 (1987), y *S.L.G. Giovanetti v. E.L.A.*, 161 DPR 492 (2004), el Tribunal Supremo reseña la derogada *Ley de Personal del Servicio Público*, 3 LPRA sec. 1301, *et seq*, aprobada el 14 de octubre de 1975. Su versión vigente es la *Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico*, Ley Núm. 8-2017, según enmendada, 3 LPRA sec. 1469, *et seq.* Esta nueva ley ordena evitar al máximo el otorgamiento de nombramientos transitorios. 31 LPRA sec. 1472c (3) (k).

OASE, y disputó el proceso activado por la agencia para la selección del puesto docente en el segmento de educación industrial (colisión automotriz).

Por su parte, la autoridad nominadora defendió el nombramiento al puesto docente transitorio al amparo de la Carta Circular 31-2016-2017 y el memorando intitulado *Profesiones Reguladas por el Departamento de Estado* del 31 de diciembre de 2013.

Analizamos las sendas posturas de las partes comparecientes a la luz de las determinaciones de hechos esbozadas en la *Resolución Sumaria*, y conforme al derecho aplicable.

Al revisar ambos recursos y contrastarlos con los hechos determinados por el foro administrativo, notamos que confrontamos las siguientes controversias, a decir: (1) la clasificación de la escuela que ofreció el nombramiento; entiéndase, si es de corriente regular o especializada; y, (2) los criterios de selección utilizados por la agencia para ocupar la posición transitoria disponible; entiéndase, si correspondía la activación del proceso de reclutamiento de personal docente con especialización particularizada.

De entrada, el recurso ante nuestra consideración citó distintas variaciones del nombre del centro docente que ofrecía el nombramiento disputado. Inicialmente, lo nombra Escuela Manuel **Meléndez** Liciaga, del Municipio de San Sebastián[13]. Posteriormente, utiliza el nombre Escuela Superior Vocacional Manuel **Méndez** Liciaga[14]. Por otro lado, la carta del Comité de Impugnaciones del 26 de abril de 2018 ubica a la escuela Manuel **Meléndez** Liciaga en el municipio de San Sebastián, Distrito Escolar de Aguadilla. Por su parte, la *Resolución Sumaria* emitida por el foro primario menciona la Escuela Superior Vocacional Manuel **M.** Liciaga y Escuela Manuel **Meléndez** Liciaga[15]. También, la determinación indica

---

[13] *Véase*, *Recurso de Revisión Judicial*, a las págs. 2, 4 y 15.

[14] *Íd.,* a las págs. 5, 7 y 17.

[15] *Véase*, apéndice del recurso, a las págs. 10 y 11.

que la Escuela Manuel **Meléndez** Liciaga pertenece al Distrito Escolar de Guayanilla[16]. Finalmente, el *Escrito en Cumplimiento de Resolución*, presentado por la parte apelada el 9 de mayo de 2025, menciona las variaciones Manuel **Meléndez** Liciaga, Manual [*sic*] **Méndez** Liciaga, Manuel **Méndez** Liciaga[17].

En la actualidad, los únicos nombres en el sistema educativo que guardan relación con la información provista son: Manuel Méndez Liciaga (que también exhibe el nombre de Ramón María Torres); y la Nueva Escuela Superior Vocacional Manuel C. Liciaga. Ambas aparecen en el directorio de escuelas, según la organización geográfica de las Oficinas Regionales Educativas (ORE)[18]. El mapa actual recoge estas escuelas bajo la ORE de Mayagüez. Los municipios de Aguadilla y Guayanilla no figuran como distritos escolares.

En resumen, subrayamos las distintas variaciones de los nombres provistos y el recuento organizacional de las escuelas para puntualizar que ninguna de las partes nos ha colocado en posición de determinar si estamos hablando del mismo centro docente o si son centros docentes distintos. Tampoco se nos adjuntó una copia de la convocatoria para el puesto, lo cual nos habría permitido constatar el nombre de la escuela. La misma OASE destacó la ausencia de la copia de la convocatoria en el expediente, por lo que declaró que estaba impedido de evaluar las cualificaciones que se solicitaban para el puesto. Posteriormente, en su comparecencia ante nos, el Procurador General subrayó la misma falta de información[19].

---

[16] *Véase*, apéndice del recurso, a la pág. 11.

[17] Véase, *Escrito en Cumplimiento de Resolución*, presentado por la parte recurrida el 9 de mayo de 2025, a las págs. 1-5.

[18] Directorio – Departamento de Educación, https://de.pr.gov/directorio/; Directorio de escuelas – Departamento de Educación de PR, https://de.pr.gov/directorio/directorio-de-escuelas/; Busca tu escuela – 2021-2022, https://buscatuescuela.dde.pr/ (última visita, 9 de mayo de 2025).

[19] *Véase*, apéndice del recurso, a las págs. 14-15. *Véase*, también, el *Escrito en Cumplimiento de Resolución*, presentado por la parte recurrida el 9 de mayo de 2025, a la págs. 4 y 7-8.

A este hecho debemos agregar la falta de claridad sobre la clasificación de la escuela que abrió la convocatoria durante el 2017-2018. La falta de precisión sobre el nombre de la escuela nos presenta problemas puesto que el argumento de las partes sobre la clasificación de la escuela resulta medular para la determinación del procedimiento aplicable, a saber; el procedimiento de reclutamiento especial al amparo de la Carta Circular Núm. 26-2016-2017 del **9 de diciembre de 2016**, *Normas y principios especializadas o proyectos educativos innovadores*[20]; la Carta Circular Núm. 31-2016-2017 del **27 de enero de 2017**, *Política pública para la reubicación, reasignación, traslado y reclutamiento del personal docente de las escuelas, de los institutos tecnológicos, la Escuela de Troquelería y Herramentaje, y la PR Aviation Maintenance Institute en el Departamento de Educación*[21]; o, el Memorando expedido por el Subsecretario del

---

[20] *Véase*, apéndice del recurso, a las págs. 97-125. La página 101 indica que estas escuelas se organizan en distintas especialidades; a saber: "**Bellas Artes** (Bellas Artes, Artes Visuales, Ballet y Teatro), **Ciencias y Matemáticas**, **Currículos Especializados** (Cinematografía, Producción de Radio y Televisión, Eco-STEAM, Desarrollo de Talentos, Pretécnica, Tecnología, Agroecología, Comercio, Deportes, Tenis de Mesa, Béisbol, Agro-TSEA, Dotados y Talentosos, y Liderazgo y Transformación Social), **Bilingües e Idiomas**, **Libre de Música**." [Énfasis en el original]. Entre las características de estas escuelas figuran:

> .        .        .        .        .        .        .        .

> 4. Seleccionan el personal docente por reclutamiento especial: maestros certificados, altamente cualificados y especialistas en la materia.

> 5. Concentran su oferta educativa en el área de especialización. En algunas de las escuelas se incluye la enseñanza formal de las asignaturas básicas. En estas escuelas con componente académico, todos los maestros se integrarán a las actividades programadas por la especialidad.

> .        .        .        .        .        .        .        .

Sobre el **Reclutamiento Especial**, la página 121 indica que: "La selección del personal docente de las escuelas especializadas o proyectos educativos innovadores se realizará mediante el procedimiento de reclutamiento especial como está especificado en la *Carta Circular de Reubicación y Reclutamiento del Personal Docente de las Escuelas y de los Institutos Tecnológicos en el Departamento de Educación*."

[21] *Véase*, apéndice del recurso, a las págs. 30-56.

Las páginas 41-43 clasifica las consideraciones para el reclutamiento. La especialidad del certificado que se solicita al aspirante de un puesto de maestro, en Educación Especial como categoría, encontramos que la especialidad del certificado requerido es uno de Educación Vocacional Industrial. En la sección de Reclutamiento Especial (F.4), la Carta Circular distingue entre reclutamientos en escuelas regulares y reclutamientos para materias ofrecidas como sigue:

> .        .        .        .        .        .        .        .

> i. Escuelas Especializadas, ii. Institut[o]s Tecnol[ó]g[i]cos de Puerto Rico (ITPR), iii. Escuela de Troqueler[í]a y Herramentaje (ETH), iv. Puerto Rico Aviation Maintenance Institute (PRAMi), v. Instituciones Juveniles, vi. Centr[o]s Privados, vii. Organizaciones sin fines de lucr[o], viii. Proyectos innovadores y programas especiales del Departamento.

Departamento de Educación, Prof. Harry Valentín González el **31 de diciembre de 2013**, *Profesiones Reguladas por el Departamento de Estado*[22].

En conclusión, ninguna de las partes comparecientes ha puesto a este foro revisor en posición de determinar si, en efecto, estamos ante un nombramiento docente en una escuela de currículo regular o especializado. La evaluación sobre la clasificación del plantel es importante. No obstante, el Memorando intitulado *Profesiones Reguladas por el Departamento de Estado* del 31 de diciembre de 2013, impone a los maestros de educación industrial la licencia y la colegiación vigentes. Ante esta clara directriz, se sostiene la elección realizada por la parte recurrida, independientemente del tipo de plantel y currículo escolar.

Según las determinaciones de hechos, el señor Arroyo laboraba como maestro de Educación Industrial (Colisión Automotriz) en la Escuela Superior Vocacional Manuel **M.** Liciaga[23]. Al no serle adjudicado el puesto transitorio, su reclamación de salarios, beneficios, emolumentos y haberes dejados de devengar no se sostiene, pues nunca se concretó el otorgamiento del puesto solicitado.

De otra parte, y en cuanto a la ausencia de parte indispensable, el primer señalamiento de error apuntado por el señor Arroyo carece de mérito. Si lo que pretendía el recurrente era que se dejase sin efecto el nombramiento del señor Medina y, en su lugar, se le nombrase a él, nada más lógico que concluir que el señor Medina tenía derecho a conocer del proceso y, de entenderlo necesario, intervenir en él. Por ende, coincidimos con el foro primario en que el señor Arroyo no realizó los esfuerzos

---

Se entenderá por proyectos innovadores y programas especiales la realización de un conjunto de actividades y tareas específicas que se desarrollan dentro de un plan estratégico, con el fin de mejorar los m[é]todos, materiales y estrategias de ense[ñ]anza, al introducir nuevos elementos para aumentar el aprovechamiento acad[é]mico de los alumnos de forma deliberada, planificada y sistem[á]tica. Entre los proyectos y programas especiales se consideran, sin limitarse a los siguientes: el sistema multigrado; escuelas biling[ü]es y de idiomas; y escuelas de vida residencial; entre otros.

[22] *Véase*, apéndice del recurso, a las págs. 93-95.

[23] *Íd.*, a la pág. 10.

suficientes para notificar al señor Medina sobre una determinación impugnada, que incidía sobre su puesto[24].

En conclusión, aunque no queda clara la aplicación de las cartas circulares citadas en la determinación y reseñadas por ambas partes, procede la determinación sumaria, por no existir hechos materiales en controversia. El señor Arroyo no logró establecer que existiera en el expediente administrativo prueba que contradijera las determinaciones realizadas por el foro administrativo. Por tanto, el DE y la OASE no cometieron los errores señalados.

IV

Por los fundamentos antes expresados, confirmamos la *Resolución Sumaria* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[24] *Véase*, apéndice del recurso, a las págs. 9-10.